**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION**

| | | |
|---|---|---|
| **ANGELA CARTER, individually** | ) | |
| **and on behalf of all others similarly** | ) | |
| **situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action No.: __16-508_____ |
| | ) | |
| **v.** | ) | |
| | ) | |
| **L'ORÉAL USA, INC., and SOFT** | ) | **CLASS ACTION COMPLAINT FOR** |
| **SHEEN-CARSON, LLC,** | ) | **EQUITABLE RELIEF** |
| | ) | **AND DAMAGES** |
| **Defendants.** | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Angela Carter, on behalf of herself and all others similarly situated, brings this class action against Defendants, L'Oreal USA, Inc. and Soft Sheen-Carson, LLC (*collectively*, "**L'Oreal**" *or* "**Defendants**"), and allege on personal knowledge, investigation of her counsel, and on information and belief as follows:

### INTRODUCTION

1.      This is a class action brought by Plaintiff Angela Carter, on behalf of herself and all other similarly situated persons, against L'Oreal, USA, Inc. and Soft Sheen-Carson, LLC. Plaintiff seeks damages and equitable remedies for herself and the putative Class, which includes consumers who purchased Soft Sheen-Carson Optimum Salon Haircare® brand Amla Legend Rejuvenating Ritual Relaxer (*hereinafter* "Amla Relaxer" *or* "the Product").

2.    L'Oreal and its consumer products divisions specifically market Amla Relaxer to African American women as an "easy no-mix, no-lye relaxer kit that ensures an easier relaxing process for unified results and superior respect for hair fiber integrity."

3.    Amla Relaxer is sold through the Soft Sheen-Carson website and other online and "brick and mortar" retailers, including, but not limited to, Amazon, Wal-Mart, Target, CVS, Walgreens, and other cosmetic and beauty supply stores nationwide.

4.    As described herein, an inherent design and/or manufacturing defect in the Product causes significant hair loss and skin and scalp irritation, including burns and blistering (*collectively* "the Injuries"). Defendants provide absolutely no disclosure or warning about these severe consequences of which Defendants have knowledge. Instead, Defendants make several assertions regarding the Product's purported safe and gentle qualities in their marketing and advertising materials, including that the Product is a "rejuvenating ritual" that "refills as it relaxes for amazingly lively-looking hair", "protects [the] scalp & skin", has "anti-breakage" properties, provides "unified results and superior respect for hair fiber integrity," and contains a "powerful anti-oxidant rich in vitamins and minerals." The Product is part of Defendants' Amla Legend product line, as indicated by the large, bold letters on the front and center of every Amla Relaxer package. In their marketing and

advertising materials, Defendants represent that their Amla Legend products, which include the Product, are a "secret ritual for hair rejuvenation," and that "Amla oil's intense moisture will rejuvenate every strand, leaving you with thicker-looking, healthier hair," with "unique properties [that] prevent breakage, restore shine, manageability and smoothness."

5.      The Injuries caused by Amla Relaxer are not *de minimus*. Consumers damaged by the Product often have permanent hair loss. Plaintiff and the putative Class Members have suffered injury in fact and loss of money and/or property as a result of using Amla Relaxer.

6.      Unknown to Plaintiff or the putative Class Members at the time of purchase, and known to Defendants, the Product contains caustic ingredients or combination of ingredients that causes Injuries upon proper application.

7.      While the Product is marketed as safe and gentle and containing no lye, it contains numerous caustic ingredients that can and do cause Injuries, including significant hair loss, skin and scalp irritation, burns and blistering, and may also compromise the immune system. Several of the Product ingredients have been banned or found unsafe for use in cosmetics by the European Union, including Diethylhexyl Maleate, Limonene, and Benzyl Salicylate. In addition, the Cosmetic Ingredient Review panel, which reviews and assesses the safety of ingredients used in cosmetics in the United States, found that Methylisothiazolinone is unsafe for use

on the skin. As a result of the defective nature of Amla Relaxer, the Product is unfit for its intended use and purpose.

8.    Defendants are aware that, when used as instructed, the Product causes Injuries due to a known material design or manufacturing defect. Despite Defendants' longstanding knowledge, Defendants failed to take reasonable steps to disclose to and/or warn the Plaintiff and putative Class Members of the dangers associated with the use of the Product.

9.    Instead of warning consumers of the detrimental effects of using Amla Relaxer, Defendants worked to conceal information regarding consumer injuries caused by the Product. Specifically, Defendants initiated private communications with consumers who posted online comments regarding Injuries resulting from their use of Amla Relaxer, and offered to pay for consumers' medical bills, wigs and other injury-related expenses resulting from the use of the Product. Following these private communications, which provided further notice to Defendants of the dangers associated with using the Product, Defendants continued to market, distribute and sell Amla Relaxer with no warnings about the consequences of using the Product as directed by Defendants.

10.    As a direct and proximate result of the inherent design and/or manufacturing defects of the Product, Defendants knew or should have known that the Injuries caused by the Product constitute a breach of the Product warranties.

Defendants knew or should have known that the Plaintiff and putative Class Members would suffer damages as a result of the Injuries caused by the Product. Notwithstanding, Defendants concealed these facts from the Plaintiff and putative Class Members. Defendants' failure to disclose the inherent design and/or manufacturing defects of the Product, which were known to Defendants and unknown to the Plaintiff and putative Class Members at the time of purchase, constitutes both an actionable misrepresentation and omission and an unfair, unlawful, fraudulent, and deceptive business practice.

11.    Because the U.S. Food and Drug Administration has limited enforcement ability to regulate cosmetic companies under the FOOD, DRUG & COSMETIC ACT, 21 U.S.C. § 301 *et seq.*, consumers, including the Plaintiff and putative Class Members, rely exclusively on cosmetic companies like Defendants who have the autonomy to decide whether to manufacture and distribute safe products. Here, the Plaintiff and putative Class Members relied, to their detriment, on Defendants, who opted to manufacture and distribute a hair product that is defective in design and/or manufacture.

12.    The Plaintiff and putative Class Members have been damaged by Defendants' concealment and non-disclosure of the defective nature of Amla Relaxer because they were misled regarding the safety and value of the Product.

13.     Based on the dates of the online consumer complaints regarding Amla Relaxer, Defendants have known about the inherent design and/or manufacturing defects of the Product for at least three years. There are hundreds of similar consumer complaints regarding Injuries caused by the Product. Notwithstanding these complaints, which are described below, Defendants have failed and/or refused to provide an adequate remedy for the systemic Injuries caused by the Product.

14.     Rather than address the systemic problems inherent to Amla Relaxer, Defendants have paid off and/or attempted to pay off individual consumers injured by the Product and covered up the problems – all while continuing to market, distribute and sell Amla Relaxer without warning consumers about the dangers of using the Product as directed by Defendants.

15.     Despite notice and knowledge of the problems caused by Amla Relaxer from the numerous consumer complaints directly received and publicly available on the Internet, Defendants have not recalled the Product or warned consumers about the dangers associated with using the Product as directed by Defendants.

16.     If Defendants had disclosed to the Plaintiff and putative Class Members that Amla Relaxer could cause and has caused Injuries when used as directed by Defendants, they would not have purchased the Product.

17.    As a direct and proximate result of Defendants' misconduct, the Plaintiff and putative Class Members have suffered injury in fact, including economic damages.

## PARTIES

18.    Plaintiff, Angela Carter, is and was at all times relevant to this matter a resident citizen of the State of Alabama.

19.    Defendant, L'Oréal USA, Inc. is a Delaware corporation. At all times relevant to this matter, L'Oreal USA, Inc. was a citizen of the state of New York with a principal place of business in New York, New York. At all times relevant to this complaint, L'Oréal USA, Inc. has transacted business in this judicial district and throughout the United States.

20.    Defendant, Soft Sheen-Carson, LLC, is a New York domestic limited liability company. At all times relevant to this matter, Soft Sheen-Carson, LLC was a citizen of the state of New York with a principal place of business in New York, New York. At all times relevant to this complaint, Soft Sheen-Carson, LLC has transacted business in this judicial district and throughout the United States.

## JURISDICTION AND VENUE

21.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least

one Class member, Plaintiff Angela Carter, is a citizen of a state different from at least one Defendant.

22.    This Court has personal jurisdiction over Defendants as many of the acts and omissions giving rise to this action occurred in the State of Alabama, including purchases of the Product by the Plaintiff and other putative Class members. Defendants have sufficient minimum contacts with the State of Alabama and intentionally availed themselves, and continue to avail themselves of the jurisdiction of this Court through their business ventures; specifically, the promotion, sale, marketing, and distribution of their products in this State.

23.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this District as Defendants do business throughout this District, including promoting, selling, marketing and distributing the Product at issue, and Plaintiff purchased the Product in this District.

## FACTS COMMON TO ALL CLASS MEMBERS

**The SoftSheen-Carson Brand**

24.    In 1998, L'Oréal purchased Soft Sheen Products, Inc., which had grown from a small family business founded in 1964 in Chicago to be the nation's largest African-American-owned beauty products company. In 1999, L'Oréal acquired Carson Products, another leader in beauty products for African-American

consumers, and in 2000 it merged the two companies to form SoftSheen-Carson. The then-chairman and CEO of L'Oréal declared the acquisitions a strategic step in enhancing the company's position in ethnic beauty markets both in the United States and globally.

25.    Today, using the SoftSheen-Carson brand, L'Oréal claims to continue a 110 year tradition of "stopping at nothing to give our customers the largest array of scientifically advanced beauty tools" to "consumers of African descent" with "innovative products that have been specially designed for their needs" and which are "safe, reliable, high quality products that are guaranteed to provide astonishing results." The company claims "Softsheen-Carson has secured its place in the market as experts", that "all of the beauty products developed at the Softsheen-Carson laboratories are specifically dedicated and adapted to perfectly meet our consumers' beauty needs" and that they "are committed to being the world leader in afro-specific hair care, and continue to focus all of our energy on delivering state-of-the-art hair care technologies that our consumers can trust." See http://www.softsheen-carson.com/about-us. (*last visited Sept. 21, 2016*).

26.    L'Oréal stresses the "ingredient science" embraced by its so-called SoftSheen Carson Laboratories: "By relying upon the depth of our scientific know-how, we are continually advancing our products in order to surpass the industry standards, making them the safest and most effective beauty products for our

consumers." <u>See</u> http://www.softsheen-carson.com/about-us. (*last visited Sept. 21, 2016*).

**The Amla Relaxer**

27.    In 2013, L'Oréal launched the "Amla Legend" line of hair products - a product range claimed to be "enriched with purified Amla extract that rejuvenates hair and undoes 2 years of damage in 2 weeks." <u>See</u> http://www.loreal.com/brand/consumer-products-division/african-beauty-brands (*last visited Sept. 21, 2016*).

28.    Defendants claimed, and continue to claim, that the Product is a nourishing, rejuvenating product which provides specific benefits, as set forth herein, most notably through their key ingredient, Amla Oil; a legendary, antioxidant rich oil derived from the Indian Amla superfruit.

29.    At all times relevant to this matter, Defendants created, developed, marketed, sold and distributed Amla Relaxer to consumers throughout the United States.

30.    The Product is sold through the Soft Sheen-Carson website, and through other online and "brick and mortar" retailers, including Amazon, Wal-Mart, Target, CVS, Walgreens, and other mass cosmetics and beauty supply stores nationwide.  <u>See</u>  http://www.softsheen-carson.com/optimum-salon-haircare/amla-legend-no-mix-no-lye-relaxer?upc=0752850088423

(*last visited Sept. 21, 2016*).

31.   On Defendants' website, Defendants promote the Product with the

following representations:

> "An easy no-mix, no-lye cream relaxer kit that ensures an easier
> relaxing process for unified results and **superior respect for hair fiber
> integrity**. Our oil infusion technology is fast acting and long lasting."

https://web.archive.org/web/20150419014200/http://www.softsheen-
carson.com/Optimum-Salon-Haircare/Amla-Legend-No-Mix-No-Lye-
Relaxer?UPC=0752850088423 (*emphasis added*) (*last visited Sept. 21, 2016*).

32.   On the website "Beauty Drama", an online cosmetics business which

sells the Product, it is promoted with the following representations:

> "**Superior straightening, amazing body & shine. Rejuvenate** with
> the 1st no-mix relaxer with amla oil.
> An easy no-mix, no-lye cream relaxer kit that ensures an easier relaxing
> process for unified results and superior respect for hair fiber integrity.
> Our oil infusion technology is fast acting and long lasting."

https://www.beautydrama.com/optimum-amla-legend-no-lye-no-mix-relaxer/
(*emphasis added*) (*last visited Sept. 21, 2016*).

33.   On the website "Wal-Mart", which sells the product, it is promoted with

the following representations:

> "Optimum Salon Haircare unveils its first Rejuvenating Ritual for your
> hair, Optimum Amla Legend No-Mix, No-Lye Relaxer. It's infused
> with a legendary Indian beauty secret: amla oil. Amla is derived from
> the amla superfruit, and is known as a powerful anti-oxidant, rich in
> vitamins and minerals, and **renowned for its natural rejuvenating
> properties of intense nourishment and conditioning**. Experience the
> legendary power of amla oil!"

**"Superior Straightening, Amazing Body & Shine** An easy no-mix, no-lye cream relaxer kit that ensures an easier relaxing process for unified results and superior respect for hair fiber integrity. Our oil infusion technology is fast acting and long lasting."

https://www.walmart.com/ip/Optimum-Amla-Legend-No-Mix-No-Lye-Relaxer/24548828#about (*emphasis in original*) (*last visited Sept. 21, 2016*).

34.     On the website "Walgreens", which sells the product, it is promoted

with the following representations:

**Rejuvenating Ritual**
No-Mix, No-Lye

- With Amla Oil from India

- For All Hair Types

- One Application

**"Refills to Reveal Visibly Fuller, Silkier Hair"**
Optimum Salon Haircare® unveils its 1st Rejuvenating Ritual for your hair, infused with a legendary Indian beauty secret:  Amla Oil.  Amla is derived from the Amla Superfruit, and is known as a powerful ani-oxidant, rich in vitamins and minerals, and renowned for its natural rejuvenating properties of intense nourishment and conditioning.  Experience the Legendary Power of Amla Oil!

**Amla Legend™ | A 5 Step Ritual**

**1.  Scalp Protector**
Protects Scalp & Skin

**2.  No-Mix, No-Lye Relaxer Base**
Ensures a No-Mistake Application

**3.  Neutralizing Shampoo**
Infuses Hydration & Conditioning

**4.  Conditioner**
Intense Conditioning & Detangling

**5.  Oil Moisturizer**
Anti-Dryness, Anti-Breakage, Anti-Dullness

**No-Mix Cream Relaxer**
Ensures an easier relaxing process for unified results and superior respect of hair fiber and integrity.

SoftSheen-Carson Laboratories® | African Hair and Skin Advanced Research

https://www.walgreens.com/store/c/optimum-salon-haircare-amla-legend-relaxer/ID=prod6185721-product (*emphasis in original*) (*last visited Sept. 21, 2016*).

35.     On the website "CVS", which sells the product, it is promoted with the following representations:

**SoftSheen-Carson Optimum Amla Legend Rejuvenating Ritual No-Mix No-Lye Relaxer**
Infuses hydration and conditioning, Intense detangling, No Mix, No-Lye Relaxer System For All Hair Types. Amla Legend Regular Relaxer ensures an easier relaxing process for untied results and superior respect of hair fiber & fiber integrity. Optimum Salon Haircare unveils its 1st Rejuvenating Ritual for your hair, infused with a legendary Indian beauty secret: Amla Oil. Amla is derived from the Amla Superfruit, and is known as a powerful anti-oxidant,rich in vitamins and minerals, and renowned for its natural rejuvenating properties of intense nourishment and conditioning.

http://www.cvs.com/shop/beauty/hair-care/treatments/softsheen-carson-optimum-amla-legend-rejuvenating-ritual-no-mix-no-lye-relaxer-prodid-915172 (*emphasis in original*) (*last visited Sept. 21, 2016*).

36.     The actual packaging for the Product also contains the following representations regarding its purported attributes:

- "Refills to reveal visibly fuller, silkier hair"
- "Refills as it relaxes for amazingly lively-looking hair"
- "Optimum Salon Haircare unveils its 1st Rejuvenating Ritual for your hair, infused with a legendary Indian beauty secret: AMLA Oil"
- "powerful anti-oxidant rich in vitamins and minerals"
- "natural rejuvenating properties of intense nourishment and conditioning"
- "protects scalp"

- "infuses hydration & conditioning"
- "anti-breakage" and
- "intense conditioning"





37.    Lye relaxers can be abrasive and cause scalp irritation and chemical burns. By representing on the front of the Product packaging, in capitalized and bold letters, that the Product has "NO-LYE," Defendants led and continue to lead reasonable consumers to believe that the Product is non-abrasive, safe and gentle,

and will not cause Injuries, including scalp burning or irritation, and/or hair loss. The "NO-LYE" claim in particular targets consumers who are seeking a gentler alternative to lye-based relaxers, which are known for their potential to cause irritation and to be harsh on hair and skin.

38.    One of the reasons a consumer may seek out a no-lye relaxer is because they are looking for a product that is milder on the scalp and gentler on hair. By representing on the front of the Product packaging, in capitalized and bold letters, that Amla Relaxer has "NO-LYE," along with representations regarding rejuvenating, nourishing, conditioning qualities of the Product, Defendants led reasonable consumers to believe that Amla Relaxer is a gentler alternative to relaxers containing lye.

39.    Despite the fact the Product is marketed as a "NO-LYE" hair relaxer, it is made with ingredients that have the potential to be every bit as caustic, dangerous, and damaging as lye.

40.    Hydroxide relaxers are often made with sodium hydroxide, potassium hydroxide, lithium hydroxide, or guanidine hydroxide. "Lye" is a generic term most commonly used for sodium hydroxide. Lye relaxers are frequently used by professionals, but are they known for their potential to cause skin irritation.[1] Thus,

_____

[1] Hydroxide relaxers generally have a high pH, and thus a strong potential to cause chemical burns. A pH level measures the acidity or alkalinity of a solution on a scale

hydroxide relaxers made without sodium hydroxide are frequently marketed as "no-lye" to appeal to consumers.

41.    However, as Defendants are well-aware, the Product contains a mix of ingredients that are as dangerous and caustic as lye. For example, the ingredient lithium hydroxide can cause damaging effects including severe irritation, burns, and blisters. Since the Product is applied to the hair, there is no avoiding potentially harmful skin contact.

42.    The statements discussed above are false, deceptive and/or misleading. In reality, the Product can and does cause Injuries, including burning, skin irritation and hair loss, when used in accordance with the instructions provided with the Product as directed by Defendants.

43.    Defendants' "NO-LYE" representation is particularly misleading by the highly caustic nature of the Product's actual components. Indeed, the ingredient lithium hydroxide can cause damaging effects including severe skin irritation, burns, and blisters.

44.    Thus, the dangerous and defective nature of the Product is apparent from its ingredients list:

---

of 0 to 14. Alkalis are bases with a pH of more than 7. The stronger the alkali, the more corrosive or caustic the material.

a.    hexylene glycol, a hazardous substance used in chemical manufacturing, which can irritate the skin, eyes, and respiratory tract;

b.    butylene glycol, a chemical that can penetrate the skin causing irritation, dermatitis, and hives;

c.    cocamidopropyl betaine, a synthetic surfactant associated with irritation and allergic contact dermatitis; and

d.    unspecified parfum / fragrance.

PRODUCT DETAILS    **INGREDIENTS**

AQUA / WATER / EAU, PARAFFINUM LIQUIDUM / MINERAL OIL / HUILE MINERALE, PETROLATUM, CETEARYL ALCOHOL, POLYSORBATE 60, BUTYLENE GLYCOL, HEXYLENE GLYCOL, LITHIUM HYDROXIDE, PEG-75 LANOLIN, OLETH-10, COCAMIDOPROPYL BETAINE, PARFUM / FRAGRANCE, COCOS NUCIFERA OIL/COCONUT OIL, PHYLLANTHUS EMBLICA FRUIT EXTRACT

http://www.softsheen-carson.com/optimum-salon-haircare/amla-legend-no-mix-no-lye-relaxer?upc=0752850088423&filterkey=optimum-salon-haircare-relaxer (*last visited Sept. 21, 2016*).

45.    Most notably, the "legendary" Amla Oil ingredient - Phyllanthus Emblica (Gooseberry) Fruit Extract – appears last on the ingredients list, indicating that of all ingredients found in the Product, the ingredient that is found in the smallest measurable amount is Amla Oil.

46.    Defendants knew, know, and/or should have known of the caustic and dangerous nature of Amla Relaxer as well as the false, deceptive and/or misleading statements it has and continues to make about the Product.

47.    The Internet is replete with consumer complaints that describe the Product causing severe adverse reactions such as significant hair loss, burns, and blisters. There are hundreds of consumer complaints on the Internet about the Product causing burning and hair loss. Consumer complaints from Amazon.com dating back to 2013, shortly after the Product was released to the public, illustrate the disturbing trend of Injuries:

●**"I have never experienced burns like the burns from this product.** buy the time I walked up the stairs to the bathroom it was unbearable. I pray my skin returns to normal and they should be sued." – Amazon Review, April 26, 2013

●"Do NOT buy if you love your hair."
"A little background: I'm 30 years old, with medium to fine high-density hair. I've been relaxing my own hair since I was 19, and prior to that, my mother did my relaxers. Always relaxed my hair once every 3-4 months because I could always manage my new growth. I've never had any issues with breakage/falling out, anything at all after relaxing my hair."
"Until now."
"Note above that I said I had some high-density hair. So even though my hair is medium to fine, I had a heck of a lot of hair (think Chaka Khan, seriously). **After using the ENTIRE bottle of neutralizer, when I went to detangle after conditioning, my hair started coming out in chunks. Just, chunks of hair coming out. It's a week later, and my hair is still coming out. And I'm not talking about breakage, I'm talking about the entire strand is coming out from the root (and I have armpit length hair).** So now, I'm taking every step I can to preserve the length and get my density back since I now have extremely thinned out hair..." –Amazon Review, April 26, 2013.

●"PLEASE DO NOT BUY THIS RELAXER!!! THIS IS THE WORST RELAXER I HAVE EVER USED!!! **IT CAUSED SEVERE DAMAGE TO MY HAIR AND I AM NOW DEALING WITH BALDING AND SHEDDING FOR THE FIRST TIME IN MY LIFE!!!** DO NOT USE OPTIMUM AMLA RELAXER IF YOU WANT TO KEEP YOUR HAIR!!!

I ALMOST NEVER POST REVIEWS BUT AFTER USING THIS PRODUCT I FEEL COMPELLED TO WARN OTHER WOMEN ABOUT THIS PRODUCT!!! I AM GOING TO TELL EVERYONE I KNOW TO STAY AWAY FROM THIS CRAP IN A JAR!!! TO THE MAKERS OF THIS PRODUCT: YOU SHOULD BE ASHAMED BUT THANKS FOR HELPING ME MAKE UP MY MIND TO GO NATURAL!!!! I WILL NEVER USE ANY SOFT SHEEN PRODUCTS EVER AGAIN!!! IF I COULD SUE I WOULD!!!" – Amazon Review, May 6, 2013.

●"Don't use it! My 26 year old daughter is upstairs crying her eyes out because her **hair is gone.** And I (her mother) relaxed it for her. We **followed directions she has been relaxing for years.** We did not leave it on too long. She **now has no hair on the sides or back of her head. Even with the scalp protector and vaseline around her edges No Hair and her scalp is burned badly I did notice a lot of hair loss during rinsing** but never imagined this. Stay away from this product I didn't know how to do no stars so I did one but for us it's a big fat 0 stars." –Amazon Review, September 27, 2013.

●"This product will make your hair fall out. **I only had it on for about 10 min and my hair was breaking off in chunks. Whatever is left on my head is soo damaged I feel like it all needs to be cut off.** A class action lawsuit should be filed." – Amazon Review, December 22, 2014.

●"Do not use!!!! Usually when I use relaxers it's to loosen the curl I have. **This relaxer is like pure lye!!!!!** I have a short hair cut, took only 6 minutes to apply and **immediately my scalp was burning so bad I was in tears!** My bathroom to my kitchen sink is literally 20ft, I had to put the water to the coldest setting to get relief. Thank God I'm a hair stylist and know what to do to repair my hair!!!! This is the worst product Optimum has ever put our. The relaxers before were good but this one is trash. The alma styling products are good but the relaxer.....TERRIBLE." – Amazon Review, June 15, 2015.

●"First I must say that I had shoulder length hair before using this relaxer! I bought this relaxer from Walmart due to the "no mix" in hopes of a quicker process. **This relaxer took my haircut in clumps. It is now 3 weeks later and my hair is still coming out! I have bald spots in the back of my head and I will now have to cut my hair off and start all over. If you love your**

**hair please DO NOT buy this product.**" –Amazon Review, October 11, 2015.

●"DO NOT USE THIS PRODUCT!!!! I BOUGHT THIS RELAXER FROM A SALLY BEAUTY SUPPLY IN TEXAS. **MY HAIR IS EXTREMEY DAMAGED. I HAVE A BALD SPOT IN THE CROWN OF MY HEAD, MY HAIR HAS COME OUT AROUND MY EDGES AND NAPE AREA AND THROUGHOUT MY HAIR I HAVE SHORT DAMAGED SPOTS. I WEAR MY HAIR SHORT AND NOW I HAVE ALMOST NO HAIR. I NOW HAVE TO WEAR WIG. I AM DEVASTATED!!!!**" – Amazon Review, March 19, 2016.

●"Run Away!!
DO NOT BUY THIS PRODUCT!!!!! I used this relaxer last week. I read the directions and did the strand test. Everything seemed fine so I proceeded to do my whole head. I have a short hair style so the process does not take a long time. It took about 10 minutes to cover my new growth and I began to try to smooth the growth but my scalp began to burn so I just washed it out. It took the whole bottle of neutralizer to wash it out and I watched in horror and my hair was coming out with each wash!! I was left with a big hole on the side of my head where my hair just came out and a big hunk of hair as a souvenir. I used to use Optimum relaxer (pink box) but I will never use their products again! – Amazon Review, September 20, 2016.

https://www.amazon.com/Softsheen-Carson-Optimum-Legend-Relaxer/dp/B00B1KM1XM#customerReviews (*last visited Sept. 21, 2016*).

48.    Despite notice and knowledge of the Injuries caused by Amla Relaxer via the numerous consumer complaints Defendants have directly received and which are publicly available on the Internet, Defendants have failed and/or refused to provide an adequate remedy for the systemic Injuries caused by the Product. Defendants have not recalled the Product or warned consumers about the dangers associated with using the Product as directed by Defendants. Instead, on occasions when consumers have reported Injuries, Defendants have covertly offered to pay

consumers' medical expenses caused by using the Product as directed by Defendants, along with conditioning treatments and wigs to cover the resulting hair loss. In short, rather than address the systemic problems inherent to the Product, Defendants pay – or attempt to pay – off individual consumers and cover up the problems, while continuing to market, distribute and sell the Product without warning consumers about the severe and known consequences of using the Product as directed by Defendants.

49.    As a result of the false, deceptive and misleading statements on the Product packaging and in corresponding marketing materials, including material omissions regarding the dangerous and unsafe nature of the Product, the Plaintiff and putative Class Members purchased Amla Relaxer with no reason to know or suspect the dangers associated with using the Product as directed by Defendants. Not until Injuries occurred would a putative Class Member have reason to know or suspect that the Product is defective. Even after sustaining Injuries, consumers might not immediately make the connection due to Defendants' false, deceptive and misleading statements regarding the purported safe and gentle nature of the Product, and the active concealment of the Product defects.

50.    As a direct and proximate result of Defendants' false, deceptive and/or misleading statements, and material omissions, Plaintiff and putative Class Members have suffered injury in fact and a loss of money or property through the out-of-

pocket costs expended to purchase Amla Relaxer, as well as the costs of mitigating the Injuries sustained as a result of using the Product as directed by Defendants.

51.    By marketing, selling and distributing Amla Relaxer to consumers throughout the United States, Defendants made actionable statements that the Product was free of defects in design and/or manufacture, and that it was safe and fit for its ordinary intended use and purpose. Further, Defendants concealed what they knew or should have known about the safety risks resulting from the material defects in design and/or manufacture of the Product.

52.    Defendants made the above-described actionable statements, and engaged in the above-described omissions and concealments with knowledge that the representations were false, deceptive and/or misleading, and with the intent that consumers rely upon such omissions and concealments. Alternatively, Defendants were reckless in not knowing that these representations and material omissions were false and/or misleading at the time they were made.

## PLAINTIFF'S FACTUAL ALLEGATIONS

53.    Plaintiff purchased Amla Relaxer from softsheen-carson.com in or around May of 2014. As a direct and proximate result of Defendants' representations and omissions, Plaintiff purchased the Product because she reasonably believed the Product was safe and would be gentle on her hair. Plaintiff followed the instruction on the Product packaging, as directed by Defendants, including performing a strand

test. As a result of her use of the Product Plaintiff experienced scalp burning and irritation and was left with sores and bald patches on her head as well as scabs on her scalp.

54.    Plaintiff waited several months and purchased Amla Relaxer from softsheen-carson.com again in or around October of 2014 in order to give the Product another try. Just as before, Plaintiff followed the instructions on the Product packaging, as directed by Defendants, including performing a strand test. Upon application Plaintiff's scalp again began to burn. As a result of her use of the Product Plaintiff experienced scalp burning and irritation and was left with sores and bald patches on her head as well as scabs on her scalp.

55.    Plaintiff would not have purchased the Product if she knew of its propensity to cause Injuries, including scalp burning, irritation and hair loss.

56.    Although Plaintiff's scalp burns have healed, her hair remains thin and brittle and she continues to have hair loss and scalp issues to the present day.

## <u>CLASS ACTION ALLEGATIONS</u>

57.    Plaintiff brings this action on her own behalf, and on behalf of the following Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Class is defined as:

> All persons in the United States or its territories who, within the relevant and applicable statute of limitations period, purchased of Soft Sheen-Carson Optimum Salon Haircare® brand Amla Legend Rejuvenating Ritual Relaxer.

58.     Excluded from the Class are (a) any person who purchased the Product for resale and not for personal or household use, (b) any person who signed a release of any Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendant, and (e) the presiding Judge in the Lawsuit, as well as the Judge's staff and their immediate family members. Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

59.     Plaintiff also brings this action on behalf of the following subclass pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).

> All residents of the State of Alabama who, within the relevant and applicable statute of limitations period, purchased of Soft Sheen-Carson Optimum Salon Haircare® brand Amla Legend Rejuvenating Ritual Relaxer.

60.     Excluded from the "Alabama Subclass" are (a) any person who purchased the Product for resale and not for personal or household use, (b) any person who signed a release of any Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any

Defendant, and (e) the presiding Judge in the Lawsuit, as well as the Judge's staff and their immediate family members.

61.    **Numerosity.** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not tens of thousands of putative Class Members. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

62.    **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all Members of the Class and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

      a.    Whether Defendants failed to comply with their warranties;

      b.    Whether Defendants' conduct constitutes a breach of applicable warranties;

      c.    Whether Amla Legend Relaxer causes burning, scalp irritation and/or hair loss upon using the Product as directed by Defendants;

      d.    Whether the Product contains design defects;

      e.    Whether the Product is defective in its manufacture;

f.   Whether and when Defendants knew or should have known that Amla Legend Relaxer causes burning, scalp irritation and/or hair loss upon using the Product as directed by Defendants;

g.   Whether Defendants were unjustly enriched by selling the Product in light of their conduct as described herein;

h.   Whether Defendants' acts, omissions or misrepresentations of material facts constitute fraud;

i.   Whether Defendants' acts, omissions or misrepresentations of material facts violated certain state deceptive practice acts, including those of the State of Alabama;

j.   Whether Defendants' acts, omissions or misrepresentations of material facts make them liable to the Plaintiff and the putative Class for negligence and strict products liability;

k.   Whether the Plaintiff and putative Class Members have suffered an ascertainable loss of monies or property or other value as a result of Defendants' acts, omissions or misrepresentations of material facts;

l.   Whether the Plaintiff and putative Class Members are entitled to monetary damages and, if so, the nature of such relief; and

m.   Whether the Plaintiff and putative Class Members are entitled to equitable, declaratory or injunctive relief and, if so, the nature of such relief.

63.   Pursuant to Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the putative Class, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the putative Class as a whole. In particular, Defendants have designed, manufactured, marketed, sold and/or distributed a defective Product, which Defendants know or should have known causes Injuries to consumers upon using the Product, as directed by

Defendants, and provided no disclosure or warning to consumers regarding these severe consequences.

64.    **Typicality.** Plaintiff's claims are typical of the claims of the Members of the putative Class and respective Subclasses, as each putative Class and Subclass Member was subject to the same common, inherent defect in the Product. Plaintiff shares the aforementioned facts and legal claims or questions with putative Class and Subclass Members, and the Plaintiff and all putative Class and Subclass Members have been similarly affected by Defendants' common course of conduct alleged herein. Plaintiff and all putative Class and Subclass Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' breach of warranties and other wrongful conduct as alleged herein.

65.    **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the putative Class and respective Subclasses. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action.

66.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

    a.    The damages suffered by each individual putative Class Member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct;

    b.    Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

    c.    The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

    d.    Individual joinder of all putative Class Members is impracticable;

    e.    Absent a Class, the Plaintiff and putative Class Members will continue to suffer harm as a result of Defendants' unlawful conduct; and

    f.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which the Plaintiff and putative Class Members can seek redress for the harm caused by Defendants.

67.    Alternatively, the Class may be certified for the following reasons:

    a.    The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants;

    b.    Adjudications of individual Class Members' claims against Defendants would, as a practical matter, be dispositive of the interests of other putative Class Members who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

    c.     Defendants have acted or refused to act on grounds generally applicable to the putative Class, thereby making appropriate final and injunctive relief with respect to the putative Class as a whole.

## CAUSES OF ACTION

## COUNT I
### UNJUST ENRICHMENT
### (On behalf of the Nationwide Class and State Subclass)

68.    Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

69.    A party is unjustly enriched when it retains a benefit to the detriment of another party against the fundamental principles of justice, equity, and good conscience.

70.    Defendants have been unjustly enriched by engaging in the wrongful acts and omissions set forth herein; transactions with Plaintiff and the Class Members which were intended to result in, and did result in, sale of Defendants' Product.

71.    Defendants have been unjustly enriched after making false, deceptive and/or misleading representations in advertisements and on the labels of the Product because Defendants knew, or should have known, that the representations made were unsubstantiated, false, deceptive and/or misleading.

72.    Defendants have reaped millions of dollars in revenue as a direct and proximate result of its scheme to mislead and deceive the Plaintiff and Class

members regarding its unsubstantiated, false, deceptive and/or misleading representations set forth herein. That Defendant has amassed such earnings by virtue of deceptive and misleading behavior violates fundamental principles of justice, equity, and good conscience.

73.    The Plaintiff and putative Class Members have been damaged as a direct and proximate result of Defendants' unjust enrichment because they would not have purchased the Product on the same terms or for the same price had they known of the dangers and hazards associated with use of the Product.

74.    Defendants continue to be unjustly enriched by the deceptive and misleading labeling and advertising of the Product.

75.    When required, the Plaintiff and Class Members are in privity with Defendants because Defendants' sale of the Product was either direct or through authorized sellers. Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendants' agents for the purpose of the sale of the Product.

76.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, the Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

## COUNT II
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq*.)
### (On behalf of the Nationwide Class)

77.    Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

78.    Plaintiff asserts this cause of action on behalf of the Nationwide Class.

79.    Defendants sold the Product as part of their regular course of business.

80.    Plaintiff and putative Class Members purchased the Product either directly from Defendants or through authorized retailers such as Amazon, Wal-Mart, Walgreens and/or beauty supply and cosmetics stores, among others.

81.    The Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*., provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

82.    The Product is a "consumer product" as that term is defined by 15 U.S.C. § 2301(1), as it constitutes tangible personal property which is distributed in commerce and which is normally used for personal, family or household purposes.

83.    Plaintiff and putative Class Members are "consumers" and "buyers" as defined by 15 U.S.C. § 2301(3), since they are buyers of the Product for purposes other than resale.

84.    Defendants are entities engaged in the business of making and selling cosmetics, either directly or indirectly, to consumers such as the Plaintiff and the

putative Class Members. As such, Defendants are "suppliers" as defined in 15 U.S.C. § 2301(4).

85.    Defendants made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between the Plaintiff, the putative Class Members, and the Defendants. Defendants expressly warranted that the Product was fit for its intended purpose by making the express warranties that the Product is an "anti-breakage" and "intense conditioning" "rejuvenating ritual" that is "rich in vitamins in minerals" and which "[r]efills to reveal visibly fuller, silkier hair", "protects scalp & skin" and "infuses hydration & conditioning" and other representations as set forth herein.

86.    Defendants' aforementioned written affirmations of fact, promises and/or descriptions, as alleged, are each a "written warranty." The affirmations of fact, promises and/or descriptions constitute a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

87.    Defendants breached the applicable warranty because the Product suffers from latent and/or inherent defects that cause substantial Injuries, rendering it unfit for its intended use and purpose. This defect substantially impairs the use, value and safety of the Product.

88.    The latent and/or inherent defects at issue herein existed when the Product left Defendants' possession or control and were sold to the Plaintiff and

putative Class Members. The defects were not discoverable by the Plaintiff and putative Class Members at the time of their purchase of the Product.

89.     All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of the Plaintiff and putative Class Members in terms of paying for the goods at issue. Defendants were placed on reasonable notice of the defect in the Product and their breach of the warranty, and have failed to cure the defects for the Plaintiff and putative Class Members, despite having several years to do so.

90.     Shortly after applying the Product and experiencing scalp burning and hair loss, Plaintiff Jacobs contacted Defendants to inform them of her user experience and injuries caused by Amla Relaxer. However, Defendants informed her there was nothing they could or would do, and that her hair would grow back. Defendants were provided further notice of the problems with Amla Relaxer through the numerous complaints received directly from the Plaintiff and putative Class Members.

91.     Defendants breached their express warranties since the Product did not contain the properties it was represented to possess.

92.     Defendants' breaches of warranties have caused the Plaintiff and putative Class Members to suffer Injuries, pay for a defective Product, and enter into transactions they would not have entered into for the consideration paid. As a direct

and proximate result of Defendants' breaches of warranties, the Plaintiff and putative Class Members have suffered damages and continue to suffer damages, including economic damages in terms of the cost of the Product and the cost of efforts to mitigate the damages caused by using the Product.

93.    As a direct and proximate result of Defendants' breaches of these warranties, the Plaintiff and putative Class Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

94.    The Plaintiff and the putative Class therefore seek and are entitled to recover damages and other legal and equitable relief, injunctive relief and costs and expenses (*including attorneys' fees based upon actual time expended*), as provided by 15 U.S.C. § 2310(d).

<u>**COUNT III**</u>
**BREACH OF EXPRESS WARRANTY**
**(On behalf of the Nationwide Class)**

95.    Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

96.    Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class.

97.    Defendants manufactured, marketed, distributed and sold the Product as part of their regular course of business.

98.    The Plaintiff and the putative Class Members purchased the Product either directly from the Defendants or through authorized retailers such as Amazon, Wal-Mart, Walgreens, and/or beauty supply and cosmetics stores, among others.

99.    Defendants, as the designers, manufacturers, marketers, distributors, or sellers expressly warranted that the Product was fit for its intended purpose by making the express warranties that the Product is an "anti-breakage" and "intense conditioning" "rejuvenating ritual" and which delivers "unified results," "respects hair fiber integrity," "reveal[s] visibly fuller, silkier hair", "protects scalp & skin" "infuses hydration & conditioning," and contains a "powerful anti-oxidant rich in vitamins and minerals", and other representations as set forth herein.

100.    Defendants made the foregoing express representations and warranties nationwide to all United States consumers, which became the basis of the bargain between the Plaintiff, the putative Class Members and Defendants, thereby creating express warranties that the Product would conform to Defendants' affirmations of fact, representations, promises, and descriptions.

101.    Defendants breached the foregoing express warranties by placing the Product into the stream of commerce and selling it to consumers, when the Product does not contain the properties it was represented to possess. Rather, the Product

suffers from latent and/or inherent design and/or manufacturing defects that cause substantial Injuries, rendering the Product unfit for its intended use and purpose. These defects substantially impair the use, value and safety of the Product.

102.   The latent and/or inherent design and/or manufacturing defects at issue herein existed when the Product left Defendants' possession or control and was sold to Plaintiff and other putative Class Members nationwide. The defects were not discoverable by the Plaintiff and putative Nationwide Class members at the time of their purchase of the Product.

103.   As the manufacturers, suppliers, and/or sellers of the Product, Defendants had actual knowledge of the breach, and given the nature of the breach, i.e. false representations regarding the Product, Defendants necessarily had knowledge that the representations made were false, deceptive and/or misleading.

104.   Defendants were further provided reasonable notice of the aforementioned Product defects and their breach of the above-described warranties via direct communications and complaints from consumers who reported Injuries sustained as a result of using the Product as directed by Defendants. Defendants were provided further notice of the Product defects and the breach of warranties via the hundreds of consumer complaints, including complaints from putative Class Members, posted on various websites, including, but not limited to, Amazon.com.

105.   The Plaintiff and the putative Class Members were injured as a direct and proximate result of Defendants' breaches of warranties because they would not have purchased the Product if the true facts had been known. Specifically, economic damages in connection with the purchase of the Product, and Injuries from using the Product as directed by Defendants.

106.   As a direct and proximate result of Defendants' breaches of these warranties, the Plaintiff and the putative Class Members Nationwide are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT IV
## BREACH OF IMPLIED WARRANTY
### (On behalf of the Nationwide Class)

107.   Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

108.   Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class.

109.   The § 2-314 of the UNIFORM COMMERCIAL CODE provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. To be "merchantable," goods must, inter alia, "pass without objection in the trade

under the contract description," "run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved," be "adequately contained, packaged, and labeled as the agreement may require," and "conform to the promise or affirmations of fact made on the container or label."

110.    Defendants formulated, manufactured, tested, marketed, promoted, distributed, and sold the Product as safe for use by the public at large, including the Plaintiff and putative Class Members who purchased the Product.

111.    Defendants knew the use for which the Product was intended and impliedly warranted the product to be of merchantable quality, safe and fit for use.

112.    The Plaintiff and putative Class Members reasonably relied on the skill and judgment of the Defendants, and as such their implied warranty, in using the Product.

113.    However, the Product was not and is not of merchantable quality or safe or fit for its intended use, because it is unreasonably dangerous and unfit for the ordinary purpose for which it was used. Specifically, the Product causes Injuries as set forth herein.

114.    Defendants breached their implied warranties because the Product does not have the quality, quantity, characteristics, or benefits as promised, and because the Product does not conform to the promises made on its labels.

115.   As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, the Plaintiff and putative Class Members suffered injuries and damages.

116.   The Plaintiff and putative Class Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Product if they had known the true facts - the Product did not and does not have the characteristics, quality, or value as impliedly warranted.

117.   As a direct and proximate result of Defendants' breaches of these warranties, the Plaintiff and the putative Class Members Nationwide are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

<u>**COUNT V**</u>
**Violation of the Alabama Deceptive Trade Practices Act**
**(CODE OF ALABAMA §§ 8-19-1, *et seq.*)**
**(On behalf of the Alabama Subclass)**

118.   Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

119.   Defendants marketing, sale and/or distribution of the Products and Plaintiff's and the putative Alabama Subclass Members' purchase of the Products was a sale or distribution of goods to a consumer within the meaning of the ALABAMA DECEPTIVE TRADE PRACTICES ACT.

120.    The Plaintiff and putative Alabama Subclass Members' purchased the Product for personal, family, or household use.

121.    Defendants' acts and practices as described herein have misled and deceived and/or likely to mislead and deceive members of the Alabama Subclass and the general public of the State of Alabama. Defendants have advertised, marketed, and sold the Product as a "no-lye", "anti-breakage" and "intense conditioning" "rejuvenating ritual" that is "rich in vitamins in minerals", which delivers "unified results" and "reveal[s] visibly fuller, silkier hair", "protects scalp & skin" and "infuses hydration & conditioning" and other representations as set forth herein. Thus, Defendant has wrongfully:

a.      represented that its goods (*i.e., the Products*) have sponsorship, approval, characteristics, ingredients, uses benefits or qualities that they do not have;

b.      represented that its goods (*i.e., the Products"*) are of a particular standard, quality, or grade, or that its goods (*i.e., the Products"*) are of a particular style or model, if they are of another; and

c.      engaged in unconscionable, false, misleading, and/or deceptive acts and/or practices in the conduct of trade or commerce – marketing, advertising, and selling the Product.

122.    By its actions, Defendant is disseminating uniform false advertising by its labeling, concerning the Product, which by its nature is unfair, deceptive, untrue, and/or misleading within the meaning of the ALABAMA DECEPTIVE TRADE PRACTICES ACT. Such actions are likely to deceive, do deceive, and continue to deceive the Alabama general public for all the reasons detailed herein above.

123.   Defendants intended for the Plaintiff and Alabama Subclass Members to rely on its representations and omissions and the Plaintiff and Alabama Subclass Members did rely on Defendant's misrepresentations and omissions of fact.

124.   The misrepresentations and omissions of fact constitute deceptive, false and misleading advertising in violation of the ALABAMA DECEPTIVE TRADE PRACTICES ACT.

125.   By performing the acts described herein Defendant J&J caused monetary damage to the Plaintiff and Alabama Subclass Members of similarly situated persons.

126.   Accordingly, Plaintiff requests the following relief both individually and on behalf of the Alabama Subclass Members:

    a.   actual damages sustained by the Plaintiff and Alabama Subclass Members or the sum of $100.00, whichever is greater;

    b.   three times actual damages;

    c.   appropriate injunctive relief in the form of enjoining Defendant from continuing to violate Alabama statutory law;

    d.   attorneys' fees and costs; and

    e.   such other and further relief as the Court deems proper.

## COUNT VI
## FRAUD
### (On behalf of the Nationwide Class)

127.   Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

128.   Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class.

129.   As described herein, Defendants knowingly made material misrepresentations and omissions regarding the Product in their marketing and advertising materials, including the package in which the Product is sold and which contains the Product.

130.   Defendants made these material misrepresentations and omissions in order to induce the Plaintiff and putative Class Members to purchase the Product.

131.   Rather than inform consumers about the dangers and hazards associated with using the Product, Defendants represented it as a "rejuvenating ritual" that "refills as it relaxes for amazingly lively-looking hair" that "protects [the] scalp & skin," has "anti-breakage" properties, provides "unified results and superior respect for hair fiber integrity" and contains a "powerful anti-oxidant rich in vitamins and minerals." Defendants further represent their Amla Legend products, including Amla Relaxer, as a "secret ritual for hair rejuvenation," that "will rejuvenate every strand, leaving you with thicker-looking, healthier hair," with "unique properties [that] prevent breakage, restore shine, manageability and smoothness."

132.   The Product is not a safe, effective, gentler or "easier relaxing process" and is not a "rejuvenating ritual" as described on Product packaging. Rather, it is composed of caustic ingredients, several of which have been banned or found unsafe for use in cosmetics by the European Union, including Diethylhexyl Maleate, Limonene, and Benzyl Salicylate. In addition, the Cosmetic Ingredient Review panel, which reviews and assesses the safety of ingredients used in cosmetics in the United States, found that Methylisothiazolinone is unsafe for use on the skin.

133. The misrepresentations and omissions made by Defendants, upon which the Plaintiff and putative Class Members reasonably and justifiably relied, were intended to induce and did actually induce the Plaintiff and putative Class Members to purchase the Product.

134.   Defendants knew the Product was not a "rejuvenating ritual" that "preserv[ed] hair fiber integrity" and "prevent[ed] breakage," but nevertheless made the and other similar representations, as set forth herein, through its marketing, advertising and product labeling. In reliance on these and other similar representations, the Plaintiff and putative Class Members were induced to, and did pay monies, to purchase the Product.

135.   Had the Plaintiff and putative Class Members known the truth about the qualities of the Product, and the dangers and hazards associated with using the Product, they would not have purchased it.

136.    As a direct and proximate result of Defendants' fraudulent acts and omissions, the Plaintiff and the putative Class Members Nationwide were injured and damaged.

137.    As a direct and proximate result of Defendants' fraudulent acts and omissions the Plaintiff and putative Class members are entitled to legal and equitable relief including compensatory and punitive damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate by the Court.

## COUNT VI
## NEGLIGENT DESIGN AND FAILURE TO WARN
### (On behalf of the Nationwide Class)

138.    Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

139.    Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class.

140.    At all times material to this action, Defendants were responsible for designing, formulating, testing, manufacturing, inspecting, packaging, marketing, distributing, supplying and/or selling the Product to the Plaintiff and putative Class Members.

141.    At all times material to this action, the Plaintiff and putative Class Members' use of the Product was in a manner that was intended and/or reasonably foreseeable by Defendants.  However, as set forth herein, use of the Product as direct

by Defendants involved and continues to involve a substantial risk of sustaining Injuries.

142.   At all times material to this action, the risk of sustaining Injuries was known to the Defendants, or by exercising reasonable care should have been known to Defendants, in light of the generally recognized and prevailing knowledge available at the time of manufacture, design, distribution and/or sale.

143.   Defendants knew—or by the exercise of reasonable care should have known—that the Product had and continues to have design defects.

144.   In fact, the Product is not at all a "rejuvenating ritual" as described on the package. Rather, it is composed of caustic ingredients, several of which have been banned or found unsafe for use in cosmetics by the European Union, including Diethylhexyl Maleate, Limonene, and Benzyl Salicylate. In addition, the Cosmetic Ingredient Review panel, which reviews and assesses the safety of ingredients used in cosmetics in the United States, found that Methylisothiazolinone is unsafe for use on the skin. Defendants knew, or should have known, that these ingredients were caustic and could cause scalp burning, irritation and hair loss. Defendants nonetheless failed to disclose this vital information to consumers, including the Plaintiff and putative Class Members.

145.   Defendants knew that the Plaintiff and putative Class Members - who purchased and used the Product for its intended use and as directed by Defendants -

were and are members of a foreseeable class of persons who were and are at risk of suffering serious inconvenience, expense, and/or Injuries solely because of the Product's design defects.

146.   Defendants, as the designers, manufacturers, distributors, marketers and/or sellers of the Product, had a duty to exercise reasonable care for the safety of the Plaintiff and putative Class Members who used, were using and/or intend to use the Product as directed by Defendants. Since Defendants produced, manufactured, distributed, and/or sold the Product, (1) they owed a non-delegable duty to consumers, including the Plaintiff and putative Class Members, to exercise ordinary and reasonable care to properly design the Product, and (2) they had a continuing duty to warn about the dangers, hazards, and/or risk of suffering Injuries associated with the intended use of the Product, as described herein.

147.   Defendants have received hundreds or more consumer complaints of Injuries resulting from use of the Product. Upon learning of these complaints, an additional, independent duty arose; to provide a warning to consumers that use of the Product as intended could result in Injuries.

148.   Notwithstanding the aforementioned duty, Defendants were negligent by one or more of the following acts or omissions in that Defendants:

     a.   Failed to give adequate warnings to purchasers and users of the Product, including the Plaintiff and putative Class Members, regarding the risks and potential dangers of using the defective Product as directed by Defendants;

      b.     Failed to recommend and/or provide proper warnings to ensure the safety of the Plaintiff and putative Class Members of using the defective Product as directed by Defendants;

      c.     Failed to adequately investigate the safety hazards associated with the intended use of the Prouct;

      d.     Negligently designing a Product with serious safety hazards and risks; and

      e.     Oversold the benefits while minimizing the true risks of suffering Injuries associated with use of the Product.

149.   Defendants knew, or by the exercise of reasonable care should have known (1) of the inherent design defects and resulting hazards and dangers associated with using the Product as directed by Defendants, and (2) that the Plaintiff and putative Class Members could not reasonably be aware of those risks. Thus, Defendants failed to exercise reasonable care in providing Class Members with adequate warnings regarding the potential for sustaining Injuries when using the Product as directed by Defendants.

150.   As a direct and proximate result of Defendants' negligent design and failure to adequately warn consumers that use of the Product could cause Injuries, the Plaintiff and putative Class Members have suffered damages as set forth herein.

151.   As a direct and proximate result of Defendants' negligent design and failure to adequately warn consumers that use of the Product could cause Injuries, the Plaintiff and putative Class members are entitled to legal and equitable relief

including compensatory and punitive damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate by the Court.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a. For an order certifying the Class under FEDERAL RULE OF CIVIL PROCEDURE 23;

b. For an order and naming the Plaintiff as representative of the Class and Subclass;

b. For an order naming Plaintiff's counsel as Class Counsel to represent the Class and Subclass;

b. For an order declaring that Defendants' conduct violates the statutes and/or laws referenced herein;

c. For an order finding in favor of the Plaintiff, the Class and the Subclass on all counts asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by a jury and/or the Court;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief, including disgorgement of all profits and ill-gotten monetary gains received by Defendants from sales of the Product;

g. For an order enjoining Defendants from continuing the unlawful practices detailed herein; and

h. For an order awarding the Plaintiff, the Class and the Subclass their reasonable attorneys' fees and expenses and costs of suit.

## PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

/s/ W. Lewis Garrsion, Jr.
W. Lewis Garrison, Jr.
wlgarrison@hgdlawfirm.com
Heninger Garrison Davis, LLC
2224 First Avenue North
Birmingham, AL 35203

Joseph L. Tucker
josh@jacksonandtucker.com
JACKSON & TUCKER, P.C.
2229 1st Ave. North
Birmingham, AL 35203-4203
Telephone: 205.252.3535
Facsimile: 205.252.3536

OF COUNSEL:

Heninger Garrison Davis, LLC
2224 First Avenue North
Birmingham, AL 35203
205-326-3336 (Telephone)
205-326-3332 (Facsimile)

Jackson & Tucker, P.C.
Black Diamond Building
2229 1st Avenue North
Birmingham, Alabama 35203
Phone: 205.252.3535
Fax: 205.252.3536

**Please serve the Defendants by Certified Mail at the following address:**

L'Oreal USA, Inc. and Soft Sheen-Carson, LLC
C/O CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NEW YORK, 12207